No. 45,144

In the Interest of BRIAN TEMPLETON, a Boy Under 18 Years of Age, *Appellant*, v. STATE OF KANSAS, *Appellee*.

(447 P. 2d 158)

Opinion filed November 9, 1968.

*Richard F. Waters,* of Junction City, argued the cause, and was on the brief for the appellant.

*Richard A. Medley,* county attorney, argued the cause, and *Robert C. Londerholm,* attorney general, and *Richard H. Seaton,* assistant attorney general, were with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This appeal involves the validity of an order entered by the district court of Geary county pursuant to K. S. A. 1965 [now 1967] Supp. 38-808 (*b*), finding that Brian Templeton was not a fit and proper subject to be dealt with under the Kansas juvenile code, and directing the county attorney to prosecute him as an adult under applicable criminal statutes.

The county attorney initiated these proceedings by a petition filed in the juvenile court of Geary county, alleging that on or about March 17, 1967, Templeton, being over the age of sixteen but under the age of eighteen years, committed two separate felonious assaults contrary to K. S. A. 21-431, and requested that he be prosecuted as an adult. A hearing on the petition was held in juvenile court, at which Templeton and his court-appointed guardian *ad litem,* William F. Stahl, a practicing attorney in Junction City, were present. We are told no transcript of the juvenile court hearing was made, and the only record of what transpired is reflected in the journal entry, which recites that evidence was presented by the state from which the court made findings substantially in the words of the statute (38-808 [*b*]) and directed that further proceedings be had against Templeton as an adult in the criminal case then pending in county court. Templeton's present attorney, Richard F. Waters, was appointed to represent him in the county court proceedings. Mr. Waters then perfected an appeal to the district court from the waiver order entered by the juvenile court.

The appeal was heard *de novo* by the district court on May 16, 1967. The parties stipulated that Templeton was over sixteen years of age at the time of the alleged offenses. The court, at the state's request, took judicial notice of the court files in three prior juvenile court cases, all dealing with Templeton. The file in the first case disclosed Templeton was found to be a miscreant child (K. S. A. 1965 [now 1967] Supp. 38-802 [*c*]), and the court ordered him placed in the care, custody and control of his father until further order of the court. In the second case Templeton was again found to be a miscreant child, and the court ordered him placed in the temporary custody of the sheriff until further order of the court. Presumably, the boy was eventually returned to his home. In the third case Templeton was found to be a delinquent child (K. S. A. 1965 [now 1967] Supp. 38-802 [*b*]) and ordered committed to the Boys' Industrial School at Topeka. In the latter case a letter from the Director of Institutions of the State Department of Social Welfare appeared in the court file, stating that Templeton would not be accepted at the industrial school because, "In view of this boy's age and his past behavior pattern and the overcrowded condition in the Boys' Industrial School, this boy would not benefit from placement in the Industrial School." Apparently, Templeton was permitted to return to his home. No further evidence was introduced at the hearing before this district court. The transcript discloses the following statement by the district judge at the conclusion of the hearing:

". . . This court finds specifically that three alternatives were used by the Juvenile Court as to control of this juvenile's activities; that by virtue of all three and by virtue of the non-acceptance, specifically, of the juvenile by the Boys' Industrial School, the Juvenile Court has exercised its discretions as provided for under the Juvenile Code, and that said minor or juvenile is not amenable to the Juvenile Code and its correctional possibilities. . . ."

The court affirmed the judgment of the juvenile court and ordered that further proceedings be had under the criminal statutes. The above findings substantially incorporating Templeton's prior juvenile court record and the other findings required by K. S. A. 1965 Supp. 38-808 (*b*) were set forth in a formal journal entry of judgment from which Templeton now appeals.

Preliminarily, we note that appellant in his brief complains of alleged constitutional deficiencies in the proceedings both in juvenile court and in district court. Counsel, however, conceded on

oral argument, and rightly so, that appellant's complaints are really confined to the district court proceedings.

The provisions of K. S. A. 38-834 (*b*) permit a child to appeal from any *final order* made by the juvenile court. Such appeal may be demanded on the part of the child by his parent, guardian, guardian *ad litem* or custodian, or by any relative of the child within the fourth degree of kinship. An order of the juvenile court relinquishing its exclusive original jurisdiction over a child pursuant to 38-808 (*b*) terminates further proceedings in that court. We hold that such an order is a final order and, therefore, is appealable to the district court.

Once an appeal has been perfected to the district court, the statute (38-834 [*c*]) provides that "The case shall be heard and disposed of in accordance with the provisions of this act and in the exercise of all the powers and discretion herein given to the juvenile court." Substantially the same language is found in the earlier appeal statute (R. S. 1923, 38-412), and in *Hollis v. Brownell,* 129 Kan. 818, 284 Pac. 388, it was held that the district court had no broader jurisdiction than the juvenile court and must try the case *de novo,* subject to all the limitations as to jurisdiction and issues which apply to the juvenile court. (Also, see, *Trent v. Bellamy,* 164 Kan. 438, 190 P. 2d 400.) Because of the similarity in statutory language, we are of the opinion the legislature contemplated no change in the manner in which the case should be heard in district court. It follows, then, that upon appeal the district judge, in reality sitting as a juvenile judge, must hear the case *de novo,* subject to the same limitations as to jurisdiction and issues applicable to the juvenile court.

As part of Chapter 278, Laws of 1965, the legislature enacted what is now 38-808 (*b*), which authorizes the juvenile court to waive its exclusive original jurisdiction in any hearing upon a petition alleging a child is, by reason of violation of a criminal statute, a delinquent child, as described in K. S. A. 1965 [now 1967] Supp. 38-802 (*b*) (1), when substantial evidence has been adduced to support findings that (1) the offense alleged is punishable as a felony under the general law; (2) the child was sixteen years of age or older at the time of the alleged commission of the offense; and (3) the child would not be amenable to the care, treatment and training program available through the facilities of the juvenile court. These three findings form the jurisdictional basis for the court's entering a valid waiver order.

The constitutionality of this statute was upheld in *State, ex rel., v. Owens,* 197 Kan. 212, 416 P. 2d 259, against the challenge that the statute failed to provide clear standards and guidelines for waiver decisions so as to guarantee against abuses and meet the requirements of due process and equal protection under the federal and state constitutions. Specifically we stated:

"The argument that no standard is provided ignores the fact that the standard is expressly stated to be whether the child is 'amenable to the care, treatment and training program available through the facilities of the juvenile court.' To require more precision than this would be impracticable. . . .

. . . . . . . . . . . . . . . .

"The section of the act in question herein requires that substantial evidence be adduced to support a finding that the offense alleged is a felony; that the child was 16 years of age or older at the time of the alleged commission of the offense, and that the child would not be amenable to the care, treatment and training program available through the facilities of the juvenile court. Considering the nature of the task imposed upon the court, these standards are more than adequate." (pp. 225-227.)

At pages 227-229 of the opinion the case of *Kent v. United States,* 383 U. S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045, was carefully reviewed. We concluded that the statute was not unconstitutional for any of the reasons asserted, and the statutory standards to be applied in adjudicating waiver proceedings were adequate when applied in accordance with the requirements of *Kent.*

In *Kent* the United States Supreme Court was confronted with the waiver provision of the District of Columbia Juvenile Court Act, authorizing the judge to waive juvenile jurisdiction after "full investigation." The statute stated the circumstances in which jurisdiction could be waived and the child held for trial under adult procedures, but it failed to set forth standards to govern the juvenile court's decision as to waiver. The conclusion of the Supreme Court was succinctly expressed as follows:

". . . as a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision. . . ." (p. 557.)

These requirements were further explained:

"Meaningful review requires that the reviewing court should review. It should not be remitted to assumptions. It must have before it a statement of the reasons motivating the waiver including, of course, a statement of the relevant facts. It may not 'assume' that there are adequate reasons, nor may it merely assume that 'full investigation' has been made. Accordingly, we hold that it is incumbent upon the Juvenile Court to accompany its waiver

order with a statement of the reasons or considerations therefor. We do not read the statute as requiring that this statement must be formal or that it should necessarily include conventional findings of fact. But the statement should be sufficient to demonstrate that the statutory requirement of 'full investigation' has been met; and that the question has received the careful consideration of the Juvenile Court; and it must set forth the basis for the order with sufficient specificity to permit meaningful review.

"Correspondingly, we conclude that an opportunity for a hearing which may be informal, must be given the child prior to entry of a waiver order. Under *Black* [*Black v. United States,* 122 U. S. App. D. C. 393, 355 F. 2d 104 (1965)], the child is entitled to counsel in connection with a waiver proceeding, and under *Watkins* [*Watkins v. United States,* 119 U. S. App. D. C. 409, 343 F. 2d 278 (1964)], counsel is entitled to see the child's social records. These rights are meaningless—an illusion, a mockery—unless counsel is given an opportunity to function.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment. *Pee v. United States,* 107 U. S. App. D. C. 47, 50, 274 F. 2d 556, 559 (1959)." (pp. 561, 562.)

The real thrust of appellant's challenge to the district court's order waiving juvenile jurisdiction is that the hearing accorded him in the district court did not measure up to the constitutional standards set forth in *Kent.* His precise complaint is that the district court did not have before it "substantial evidence" to support its findings that the offenses alleged against him were punishable as felonies and that he would not be amenable to the care, treatment and training program available through the facilities of the juvenile court— the first and third findings required by the statute (38-808 [*b*]). As previously indicated, the parties stipulated that Templeton was over sixteen years of age at the time the alleged offenses were committed—thus dispensing with further proof as to the second finding.

Under the provisions of the statute, the three findings necessary for the court to make in order to waive its exclusive original jurisdiction must be predicated on "substantial evidence." The term substantial evidence has come to have a well-defined meaning in our law. It is said to be evidence possessing something of substance and relevant consequence, and which furnishes a substantial basis of fact from which the issues tendered can be reasonably resolved (*e. g., Jones v. City of Dodge City,* 194 Kan. 777, 402 P. 2d 108; *Curry v. Stewart,* 189 Kan. 153, 368 P. 2d 297).

As to the first finding required by the statute, appellant urges that the legislature intended that evidence must be presented to

prove that a felony has, in fact, been committed. Such a suggestion, in our opinion, completely disregards the plain and unambiguous language of the statute. The words "offense *alleged* is punishable as a felony" have reference to the allegations of the petition rather than proof of the actual commission of a felony. If the allegations set forth facts constituting a public offense under the criminal laws of this state, and the offense is punishable as a felony (K. S. A. 62-104), the first finding may be made as a matter of course. In the case at bar the petition alleged two separate felonious assaults contrary to K. S. A. 21-431, and the district court properly determined that the first requirement of the statute was satisfied.

Appellant further asserts that the court records containing the prior juvenile court proceedings involving him were insufficient to constitute "substantial evidence" from which the district court could properly make the third statutory finding, namely, "the child would not be amenable to the care, treatment and training program available through the facilities of the juvenile court."

Many factors may enter into the judge's decision in making the third finding. He is called upon to exercise judicial discretion and judgment and determine from the evidence what would be the best interests of the state and of the child. The latitude given him, however, is not complete, for its assumes not only procedural regularity sufficient to satisfy the basic requirements of due process and fairness but also compliance with the statutory mandate of finding from substantial evidence the child's lack of amenability to the care, treatment and training program available through the facilities of the juvenile court.

In *Kent* the Supreme Court quoted approvingly from *Watkins v. United States,* supra, to the effect that social records, staff reports and the like are usually relevant to the issue of waiver, since the court, in making its decision, must be deemed to consider the child's entire history. *Watkins* makes it clear that the relevance of particular matters must be "construed generously." In those cases where the child has a prior juvenile record, the court files in the previous proceedings are extremely relevant to the waiver question. Ordinarily these files contain information indicative of the success or failure of earlier rehabilitative efforts by the juvenile court. In the present case it appears that no social record or staff reports, if in fact there were any, were considered by the district court in rendering its decision. The court had before it and relied only on the

court files of the three prior juvenile court cases involving Templeton. Those files disclosed that the boy had been permitted to remain in his home environment without success, that he had been placed in the temporary custody of the sheriff on at least one occasion and then permitted to return home—again with no success—and eventually was committed to the Boys' Industrial School but denied admission because of his "age and his past behavior pattern." Templeton's attorney offered nothing to refute what was contained in the court files of the previous juvenile proceedings, nor is complaint made that he was denied any information relied on by the district court in making its decision.

We deem it appropriate to emphasize that notwithstanding the confidentiality the provisions of K. S. A. 38-805 accord the records of the juvenile court and "information obtained and records prepared by any employee" of the court, there is no question, since *Kent*, but that at the waiver hearing the child's attorney must be advised and afforded access to any records, reports or other material in the hands of the court or under its control upon which the court relies in order for counsel to assist effectively in the determination of the waiver question. In *Kent* the point was made that there is no irrebuttable presumption of accuracy attached to reports of the juvenile court staff, and the court stated:

". . . If a decision on waiver is 'critically important' it is equally of 'critical importance' that the material submitted to the judge—which is protected by the statute only against 'indiscriminate' inspection—be subjected, within reasonable limits having regard to the theory of the Juvenile Court Act, to examination, criticism and refutation. While the Juvenile Court judge may, of course, receive *ex parte* analyses and recommendations from his staff, he may not, for purposes of a decision on waiver, receive and rely upon secret information, whether emanating from his staff or otherwise. The Juvenile Court is governed in this respect by the established principles which control courts and quasi-judicial agencies of the Government." (p. 563.)

We conclude that the evidence before the district court here was substantial and supported the finding that Templeton was not amenable to further proceedings in the juvenile court.

Although we have said that the provisions of 38-808 (*b*) set forth clear standards and guidelines to guarantee against abuses and meet the requirements of due process and equal protection, we go further and call attention to the mandate of *Kent* that the juvenile court must accompany its waiver order with a statement of the reasons or considerations therefor so that there may be a "meaning-

ful review." In our opinion a "meaningful review" of the waiver order will be possible if, in addition to a formal journal entry incorporating the three findings required by the statute, the record also contains *either* a transcript of the hearing disclosing the evidence upon which the court relied in relinquishing its jurisdiction, *or*, the journal entry itself contains a summary of such evidence. In either instance, the reviewing court is then in a position to determine whether or not there was substantial evidence before the lower court to support its statutory findings.

Under our *de novo* appeal procedure, this case has come to us for review of the district court's order, and we therefore have been concerned only with what transpired there. Since, undoubtedly, cases will arise in which the validity of a waiver order entered by the juvenile court will not be challenged until after the juvenile has been successfully prosecuted as an adult, we hasten to add that the views expressed in this opinion should be adhered to by juvenile courts in determining the waiver question in the first instance.

The judgment is affirmed.