No. 45,159

In Re Darrell Dean Long, a Juvenile, *Appellant*, v. State of Kansas, *Appellee*.

(448 P. 2d 25)

Opinion filed December 7, 1968.

*James R. Schmitt*, of Wichita, argued the cause, and *Charles C. McCarter, Kent Frizzell*, and *Carl L. Wettig*, of Wichita, were with him on the brief for the appellant.

*Leonard F. Watkins, Jr.*, assistant county attorney, argued the cause, and *Robert C. Londerholm*, attorney general, and *Darrell G. Mitchel*, county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

O'Connor, J.: The juvenile court of Butler county entered an order pursuant to K. S. A. 1965 (now 1967) Supp. 38-808 (*b*) waiving jurisdiction over Darrell Dean Long. An appeal to the district court, where the lower court's determination was upheld, was followed by the appeal to this court.

On July 1, 1966, the county attorney initiated proceedings in juvenile court by filing a verified petition in which it was alleged that Darrell, then over sixteen but under eighteen years of age, had committed an act of delinquency which if committed by one over eighteen years of age would be a felony. Seventeen days later, based upon the results of a court-ordered psychiatric evaluation, Darrell was committed to St. Francis Hospital in Wichita for a "total inpatient treatment program" under the care and supervision of Dr. C. J. Kurth. While the treatment was being carried out, the court, on its own motion, set the case for further hearing on August 25, 1966. At the hearing, the court considered whether or not its jurisdiction over the young man should be waived, pursuant to the statute (38-808 [*b*]). Darrell was represented by Warren Ralston, an attorney, as his duly appointed guardian *ad litem*, and the boy's

parents were represented by James R. Schmitt. The parties stipulated Darrell's birth date was September 14, 1948; that he was over sixteen years of age at the time of the alleged offense; and that the offense was punishable as a felony if committed by a person over eighteen years of age. The evidence before the court consisted of various psychiatric and psychological reports relating to the boy from the inception of the case to the time of hearing. Thereupon, the court made the three findings required by the statute (38-808 [b]), concluded that Darrell was not a fit and proper person to be dealt with under the Kansas juvenile code, and directed the county attorney to prosecute him under applicable criminal statutes—all of which is reflected in a written journal entry. A verbatim transcript was made of the waiver hearing and became a part of the record in the case.

An appeal to the district court from the waiver order was perfected by Darrell's father. The appeal was heard April 10, 1967. By agreement of the parties, the matter was submitted on the file, exhibits, and transcript of the proceedings had in juvenile court. Following oral arguments of counsel, the district judge commented to the effect there was "probably some basis" for the juvenile court's findings, and he was not going to dismiss the criminal action then pending against Darrell. The journal entry of judgment reflects that the judge's comments were adopted as specific findings of the court, and the appeal was "denied." From this order of the district court Darrell has appealed.

At this juncture we should point out that a review of the district court proceedings has disclosed an infirmity of such magnitude that the case must be reversed and remanded.

It is apparent from the record the district judge misconceived his true function when considering and determining an appeal from juvenile court relating to the waiver of jurisdiction. Instead of hearing the matter *de novo* and making his own independent findings and conclusions, he sought to determine whether or not there was evidence to support those of the juvenile court. Unfortunately, the judge did not have the benefit of our recent decision in *In re Templeton,* 202 Kan. 89, 447 P. 2d 158, where we said, *inter alia:*

"When an appeal to the district court is taken from a waiver order entered by the juvenile court pursuant to K. S. A. 1967 Supp. 38-808 (b), the district judge must hear the case *de novo,* subject to the same limitations as to jurisdiction and issues applicable to the juvenile court." (Syl. ¶ 2.)

An appeal from a waiver order entered by the juvenile court is to be heard and disposed of just as if the waiver proceedings had originated in the district court and no action had been taken by the lower court. The district court, although functioning as an appellate court only in a statutory sense, actually is in the same position as a court of original juvenile jurisdiction. The district court considers anew all evidence that any party may desire to present. Any evidence relevant to the waiver question is admissible, whether introduced in the lower court or not. The parties may, as they did here, agree to submit the matter on the same evidence heard and considered by the juvenile court. The district court is in no way committed by the findings of the juvenile court; nor is the lower court's conclusion, that jurisdiction be relinquished, binding in any respect. From the evidence introduced in the district court, the judge is to make his own independent findings and determination, all in accordance with what was said in *In re Templeton,* supra.

The excessive amount of time elapsing between the waiver order entered by the juvenile court on August 25, 1966, and the hearing of the appeal in this court at our November 1968 session requires a brief comment. Darrell, who was seventeen years of age when jurisdiction was first waived, is now twenty years old. The case is being returned to the district court for reconsideration of the waiver question, which includes the issue of whether or not the young man is amenable to the care, treatment and training program available through the facilities of the juvenile court. While we express no opinion on what the ultimate disposition of the case should be, the best interests of all concerned dictate that proceedings of this nature require expeditious treatment at every stage of the appellate process. Although the statutes are silent regarding preferential settings of juvenile court cases in appellate courts, we believe the very nature of the proceedings, particularly when a waiver order is involved, requires early disposition by both the district court and supreme court. The bench and bar are admonished to give such cases the preferential treatment that justice and public interest may require. ( See Supreme Court Rule No. 10 [*b*], 197 Kan. LXVI. )

The judgment is reversed and the case remanded to the district court with directions to proceed in accordance with the views expressed in this opinion.

SCHROEDER, J., concurring: The opinion written for the court meets with my approval on the law of this state under present

legislative enactments, but I feel obligated to sound an alarm on behalf of the citizens of this state who are being shortchanged in the administration of justice.

Theoretically, the judiciary of the state is responsible for the administration of justice with reasonable dispatch. It has often been said that justice delayed is justice denied.

The concern expressed in my dissenting opinion in *State, ex rel., v. Owens,* 197 Kan. 212, 416 P. 2d 259, beginning at page 231 of the official report, is presently being illustrated in the form of tangible results from juvenile cases that have just begun to appear at the appellate level.

The impact of *Kent v. United States,* 383 U. S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045 (decided by the United States Supreme Court on the question of the juvenile court's waiver of its original exclusive jurisdiction) on the juvenile code of Kansas (K. S. A. 38-801, *et seq.*) as amended by L. 1965, ch. 278 extending the jurisdiction of the juvenile court to sixteen and seventeen year old offenders of the law, is abundantly apparent on the facts presented by the instant case. The application of principles announced in *Kent* has molded our law with respect to waiver proceedings conducted in the juvenile court, where the sixteen or seventeen year old male offender commits an offense punishable as a felony under the general law. This is clearly indicated by our recent decision in the case of *In re Templeton,* 202 Kan. 89, 447 P. 2d 158. Without reiterating what was there held and said, and without repeating what was said in my dissenting opinion in *Owens,* further remarks herein are premised upon a full understanding of the matters stated and considered in these opinions.

The misconceived act of the legislature (L. 1965, ch. 278) has placed a tremendous stumbling block in the path of our judiciary to administer justice expeditiously. Apparently it was an effort to rehabilitate the arrant individual male youth offenders who were sixteen and seventeen years old by assisting them to the full extent of advances made in sociology and psychiatric treatment that prompted the legislature to amend the juvenile code in 1965. But this requires more than wishful thinking. The juvenile court must be given *staff personnel* to accomplish these goals, and it must also be provided with facilities for the care, treatment and training program available through such staff personnel of the juvenile court in order that it can administer the increased case load in the juvenile

court. It must be observed that more than half of the criminal offenses in this state are committed by juveniles under the age of eighteen years. The lack of facilities in the juvenile court was abundantly evident to the legislature as indicated by the observations made in my dissenting opinion in *Owens*.

Where the juvenile offender is sixteen years of age or older, but under eighteen years of age, at the time the alleged commission of an offense punishable as a felony under the general law is committed, the juvenile court is required to make only one other finding to form the jurisdictional basis for the waiver of its exclusive original jurisdiction over such child, thereby authorizing his prosecution as an adult under applicable criminal statutes. This finding is that the child would not be amenable to the care, treatment and training program *available through the facilities of the juvenile court.* (*In re Templeton,* supra, Syl. ¶ 3.) Now, if facilities are not made available to the juvenile court to handle such cases, the waiver proceeding becomes standard operating procedure for the juvenile courts in the disposition of such cases. What does this mean?

Turning to the facts in the instant case, the offense committed by the juvenile appellant herein was first brought to the attention of the juvenile court by proceedings initiated by the county attorney on the 1st day of July, 1966. To date the appellant has had one proceeding in the juvenile court, one proceeding in the district court, and a hearing on appeal in the Supreme Court, all relative to the matter of a waiver of the original exclusive jurisdiction of the juvenile court to hear the matter. The decision of this court on appeal discloses that the appellant is entitled to receive another hearing on the matter of waiver in the district court, and he will be entitled to appeal such decisions to this court, *both of which will still be on the question as to whether the juvenile court has properly waived its original exclusive jurisdiction.*

At the present time the appellant has been in court for two and one-half years, and if this is any criterion, chances are he may be in court five years before the county attorney, if he is persistent, is permitted to prosecute him as an adult for the offense he is alleged to have committed.

Once criminal proceedings get under way the appellant will be entitled as a matter of right to a preliminary hearing, a trial to a jury in the district court, and an appeal to the Supreme Court. Thus, it could conceivably be six or seven years before justice could be

brought to bear, if the appellant is tried as an adult and found guilty of the criminal offense he is alleged to have committed.

The record in the instant case does not disclose the appellant to be an indigent; presumably, expenses are being paid by his parents. But where a juvenile offender subject to waiver proceedings is an indigent and his parents are unable to pay for an attorney, the state will be required to furnish counsel throughout these drawn out proceedings in court after court. If fee allowances to counsel for indigent defendants in past criminal cases is any criteria, the taxpayers will be required to pay the bill of approximately $100 for each appearance of an attorney in the juvenile court and each appearance of an attorney in the district court, and approximately $300 for each appearance in the Supreme Court. Assuming facts similar to those in the instant case involve an indigent appellant, who in the ordinary course of events will exhaust every legal remedy, the cost to the taxpayers of the state would be $1,400 for attorneys' fees alone on the basis of figures heretofore indicated. At this point the offender would still have his post conviction remedies available in which he is also entitled to the appointment of counsel to represent him at the taxpayers' expense.

It is only fair to observe under circumstances presently foisted upon the judiciary of this state by L. 1965, ch. 278, without adequate legislative enactments to make the juvenile offender amenable to the care, treatment and training program available through the facilities of the juvenile court, that justice is not only hamstrung and delayed beyond all reason, but the taxpayers of the state are relegated to the position of forgotten citizens.