No. 46,715

In the Interest of: EDWARD BOBBY PATTERSON, A Minor, TERRY LEE PAYNE, A Minor, DONALD WENDELL DYER, A Minor, *Appellants.*

(499 P. 2d 1131)

Opinion filed July 19, 1972.

*T. E. Lauer,* of the National Juvenile Law Center, Saint Louis University, St. Louis, Missouri, and *Thomas De Coursey,* of the Wyandotte County Legal Aid Society, Inc., Kansas City, Kansas, argued the cause, and *Anthony R. Russo, Hosea Ellis Sowell* and *James C. Thompson,* all of Kansas City, Kansas, were with them on the brief for the appellants.

*Nick A. Tomasic,* assistant county attorney, argued the cause, and *Vern Miller,* attorney general, and *Frank D. Menghini,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

Foth, C.: This case is here because, since the 1965 act (Laws 1965, ch. 278.) fixing the age of adult responsibility for males at eighteen years, Kansas has utterly failed in its responsibility to the troubled 16 and 17 year old boys it now classifies as juveniles.

The dilemma our state faces in dealing with these young men was pointed out by this court six years ago in *State, ex rel., v. Owens,* 197 Kan. 212, 416 P. 2d 259, where we first considered the act which extended the juvenile age from 16 to 18. In that case we recognized and approved the constitutionality of the *parens patriae* approach to offenders in this age group, but struck down that part of the act authorizing the commitment of juveniles to the Kansas state industrial reformatory.

Commitment to what is clearly a penal institution was found to be incompatible with the concern expressed elsewhere in the juvenile code for the individual needs of the errant boy. It would, additionally, result in penal servitude for which a criminal conviction conforming to due process would be constitutionally required. Commitment to the boys industrial school (B. I. S.), an institution having far different aims and characteristics from the reformatory, was said to have neither of these drawbacks. It was partly because of the availability of B. I. S. that we upheld the 1965 act.

When the legislature spoke in 1965, and when we wrote in *Owens* a year later, it was assumed by all that resources and a program would soon be made available to meet the clearly recognized needs of this age group. The 1965 act conditioned their commitment to B. I. S. on the prior approval of the director of the division of institutional management, the state welfare department official having supervisory authority over that and other similar state institutions. In 1969 the legislature said that such approval would be required only for commitments made prior to July 1, 1971 (Laws 1969, ch. 224, § 4), while in 1971 it extended the approval requirement until July 1, 1973 (Laws 1971, ch. 151, § 2).

By these later provisos a self-imposed deadline for state action was set, and then extended; the first perceptible step to meet it has yet to be taken.

One product of such inaction is this case, in which the courts find themselves at a loss for what to do with three young men who have gotten themselves into serious trouble. Edward Bobby Patterson, Terry Lee Payne and Donald Wendell Dyer are all over

16 but under 18. They stand accused of conduct which, if committed by an adult, would be first degree murder. The homicide apparently happened during a liquor store robbery.

Proceedings were initiated in the juvenile court of Wyandotte county to have each adjudged a delinquent child. As a preliminary matter that court held a hearing and on November 3, 1971, found that none of them was "amenable to the care, treatment and training program available through the facilities of the juvenile court," and therefore that none was "a fit and proper subject to be dealt with under the Kansas juvenile code." (K. S. A. 1971 Supp. 38-808 [b].) They were ordered to be prosecuted as adults, and as such they would be liable for life sentences if convicted.

In the juvenile judge's findings he said:

". . . Since the charges would be first degree murder under the definition of our Criminal Laws, and since it is the belief of this Court that if first degree murder is proved it should not be a parolable or probatable offense. It is therefore the finding of the Court that these youngsters are not amenable to the care, treatment and facilities available to this Juvenile Court, and that these three juveniles, Terry Lee Payne, Edward Bobby Patterson, and Donald Wendell Dyer, are not fit and proper subjects to be dealt with under the Kansas Juvenile Court Code in this particular procedure. I am not finding that they should not in the future be dealt with as juveniles; in other words, that this finding applies only to this alleged crime; . . ."

The juvenile court thus expressly eschewed its statutory option of "attaching" its finding to future acts—it deliberately refrained from committing these boys forever to the adult courts, as it could have done under K. S. A. 1971 Supp. 38-808 (b). The clear implication is that they were not thought to be incorrigible or uncorrectable by the juvenile court, but only that they stood charged with an offense regarded as too serious to merit any treatment which did not feature confinement as a primary ingredient.

The boys appealed to the district court, where a consolidated hearing was held on the "amenability" of all three. The state produced only one witness, Patrick J. Finley, director of court services for the Wyandotte County juvenile court. (He had been the only witness for either side in the juvenile court.) The crucial aspect of his testimony was that B. I. S. would not take any of these boys because of their age and the nature of the crime charged; this allegation was based on a conversation he had had with the superintendent of the school. From this he concluded that probation was the only course available if they should be handled through the facilities of the juvenile court. The nonavailability of B. I. S. was

his sole consideration in recommending a finding that the boys were not "amenable" to the court's processes.

He also testified as to the ages of the boys, which was not disputed; that Patterson had previously been adjudged a delinquent and placed on six months probation; that Dyer had been before the juvenile court, but for counseling only; and that Payne had had no contact with the court, nor had any investigation been made into his school record, home life or medical history.

Patterson and Payne, prior to the district court hearing, had been interviewed at their own behest by a clinical psychologist, Dr. V. W. Harris. His testimony on their behalf is summarized in the parties' stipulation as follows:

". . . He indicated that Terry Lee Payne was interviewed by him two times and found to be of average intelligence, not psychotic or suffering from mental or physical disorder, anxious and inclined to be passive. He indicated that he felt Payne was amenable to treatment and that his biggest problem was passivity. In regard to Patterson, Dr. Harris said that he found him to be of average intelligence with an above average verbal aptitude. He stated that he found Patterson not dangerous nor anti-social. He viewed him as close to sick but not sick and susceptible to rehabilitation in some kind of planned environment."

The boys also produced Payne's mother, who testified as to his good school and home record and produced a letter from his high school principal saying he would take him back despite the trouble he was in. Dyer's mother likewise testified as to *his* past good conduct.

On this evidence the district court made the following findings:

"Under 38-808 K. S. A. the Juvenile Court is authorized to certify a young man to the criminal courts for trial as an adult when substantial evidence has been adduced to support a finding:

"(1) that the young man was 16 years of age or older at the time of the alleged commission of the offense; and

"(2) that the offense charged is of such a nature that it would be a felony if committed by a person 18 years of age or older; and

"(3) that the young man would not be amenable to the care, treatment and training program available through the facilities of the juvenile court before whom he is brought.

"There is no dispute about (1) or (2); the entire issue here centers about (3).

"We must keep in mind that we are concerned not with the treatment and training program available through the Juvenile Court of Judge Paul Alexander at Toledo, Ohio, where treatment facilities are unlimited; not through the Juvenile Court of Judge Gilliam at Denver, Colorado, where for years the Judge has been able to come up with whatever he needed in the way of per-

sonnel and facilities; but with the care, treatment and training program available through the Juvenile Court of Wyandotte County, Kansas.

"Substantial evidence has been adduced that if tried in the Juvenile Court of Wyandotte County, Kansas, and if convicted of what would be murder in the first degree if committed by a person 18 years of age or older, the Juvenile Court Judge would have available to him but one disposition of the case— to place the young man on probation.

"Dr. Harris characterizes Terry Payne as being of average intelligence . . . poor memory and concentration . . . poorly informed . . . very anxious . . . mildly depressed . . . fearful and suspicious . . . a high need for contact with others . . . a need to be popular and to be liked by his peers . . . greatly in need of emotional support and attention . . . passive . . . likely to follow the lead of others . . . not decisive . . . does not assume initiative . . . a 'sucker' for a more dominant unfavorable companion . . .

"Dr. Harris recommends for Terry Payne psychological treatment dealing with this passivity and fear, along with educative planning emphasizing some trade or skill development.

"Dr. Harris concludes that if all of these things can be put together, so to speak, Terry can be reached emotionally and is amenable to treatment. It is crystal clear that there is no care, treatment or training program availble through the Juvenile Court of Wyandotte County, Kansas that can supply Terry's needs.

"Dr. Harris characterizes Bobby Patterson as being of average intelligence . . . average judgment . . . memory and concentration good . . . passive and suspicious . . . desperately in need of a father figure . . . angry at women who he views as critical, nagging, immoral and otherwise unfair to men . . . not likely to respect or obey a mother's control . . . a bright boy, capable, who needs guidance in order to be able to develop.

"Dr. Harris says Patterson is amenable to psychological treatment under the strong and supportive guidance of an adult male; that educative planning should be along the line of business computer skills, where his interest lies.

"It is crystal clear that there is no care, treatment or training program available through the Juvenile Court of Wyandotte County, Kansas that can supply Bobby's needs.

"We do not have the benefit of an examination of Donald Dyer by Dr. Harris. When the statute speaks of 'treatment and training program,' it gives the Judge of the Juvenile Court a wide latitude. I have to assume that he conscientiously exercised his best judgment in making the determination that his court did not have a treatment and training program that could assist in Dyer's rehabilitation. I make the same finding.

"The end result is that in all three cases I do arrive at the same conclusion and enter the same judgment the Juvenile Court of this county entered. The restraining orders issued by Judge Burns on December 6th are dissolved and the cases against these three young men should proceed to preliminary hearing in the Magistrate Court."

From this finding the boys have appealed to this court, where

their primary claim is that the district court's finding is not supported by substantial evidence.

In its memorandum the district court correctly enumerated the jurisdictional findings necessary to certify a young man for trial as an adult, *i. e.,* age, the felonious nature of the offense, and the lack of amenability of the boy. See, *In re Templeton,* 202 Kan. 89, 447 P. 2d 158. It also correctly noted that its findings as to all three must be based on "substantial evidence." K. S. A. 1971 Supp. 38-808 (*b*); *In re Templeton,* supra; *State, ex rel., v. Owens,* 197 Kan. 212, 416 P. 2d 259; *In re Stephenson & Hudson,* 204 Kan. 80, 460 P. 2d 442.

Here, of course, only the amenability issue was in dispute, and it is on that question that we must search the record for "substantial evidence." Such a search reveals one basic and apparently controlling fact—B. I. S. wouldn't accept them.

Beyond that we have only the psychologist's opinion that two of the boys would respond to treatment and the district court's bald assertion that it is "crystal clear" that such treatment is unavailable through the Wyandotte County juvenile court. As to the third boy the record is devoid of evidence concerning his background or personality. As to him the district court deferred entirely to the juvenile judge's determination, saying, "I have to assume that he conscientiously exercised his best judgment. . . ." In so doing the district court failed to make the independent evaluation contemplated by a *de novo* hearing, and as required by *Templeton,* supra, and, especially, *In re Long,* 202 Kan. 216, 448 P. 2d 25.

Nowhere in the record do we have the normal and expected social record or staff reports alluded to in *Templeton,* nor do we have the prior juvenile files showing unsuccessful efforts at rehabilitation which were found to be an acceptable substitute in that case. The nature of Patterson's previous delinquency, its date, and the success or failure of his probation do not appear. The cause, nature and result of Dyer's counseling were likewise not before the court. There was no evidence of persistent prior misconduct such as that which supported the finding of nonamenability in *In re Stephenson & Hudson,* supra. Further, no effort was made to differentiate among the boys as to culpability for this particular offense, any more than there was as to their past history or future potential.

In sum, the three were lumped together as being charged with an offense for which commitment to an institution was conceived as the

only answer. We cannot escape the conclusion that the district court, like the juvenile court, saw disposition as being dictated by the offense and not the offender. If the seriousness of the offense is the prime consideration, the lack of concern for the individual potential of the boys is understandable—it is simply not relevant to determining what procedure will result in confinement.

We think, however, that the approach taken below misconceives the thrust of the juvenile code, as set out in K. S. A. 38-801 and reviewed at some length in *State, ex rel., v. Owens,* supra. Mr. Justice Schroeder succinctly summarized the statutory and case law by saying:

"From the foregoing it may be said a juvenile proceeding under Kansas law is a protective proceeding entirely concerned with the welfare of the child, and is not punitive." (*Id.,* 197 Kan., at 220.)

Nowhere is it indicated that the nature of the transgression should alter this philosophy.

Looking at the record from this point of view, we are unable to perceive any substantial evidence from which one could reasonably conclude that these boys are not amenable to the processes of the juvenile court. We are therefore reversing the district court's order and remanding this case for a re-examination of the question of whether any of the three boys is a fit and proper subject to be dealt with under the juvenile code.

Upon such re-examination the unavailability of B. I. S., if shown, would be a proper factor for the court's consideration, but should not be controlling. Other possible dispositions should be considered, including other institutions within or without the state which might be willing to accept one or more of the boys, the availability of public or private sources of the treatment and regimen recommended by Dr. Harris, and whether any alternate routes available would "best serve the child's welfare and the best interests of the state." (K. S. A. 38-801.)

It may well be that such further exploration will result in no new discoveries. We can well appreciate the trial judge's comments in comparing Kansas juvenile facilities to those available to juvenile courts in more enlightened jurisdictions; we empathize with the sense of frustration both he and the juvenile judge must feel. However, we would anticipate that after such reconsideration the record will reflect the avenues considered and their suitability or lack thereof as they relate to each individual boy.

At this point we note that the boys here argue strenuously that the unavailability of B. I. S. was not established by any *competent* evidence, much less by "substantial" evidence. Their argument, which has much merit, is that the only evidence on this issue is a purely hearsay statement which, in turn, was made by the superintendent of the school and not by the director of the division of institutional management with whom the permission authority is lodged. To the extent that this was an evidentiary shortcut it may easily be remedied at a future hearing. To the extent that the director's considered judgment is required we assume such a decision, one way or another, will be made and properly presented to the court.

They also complain that in granting or denying permission for commitment to B. I. S. the director has unbridled discretion, and does not afford an opportunity to be heard during his decision making process. If his decision were to be the sole factor determining whether a boy was to receive juvenile court "care, treatment and training" or a life sentence to a penal institution, we might be required to face the constitutional questions thus raised. However, in view of what we have said and our disposition of this case we think their discussion unnecessary at this time.

It is also urged that the statute makes an unreasonable discrimination between boys in this age group who may be tried as adults and girls who may not, thus denying boys the equal protection of the laws. In support the boys cite *Lamb v. Brown*, 456 F. 2d 18 (10th Cir. 1972), where a mere reference to unspecified "demonstrated facts of life" was held to be insufficient to justify a similar distinction in the Oklahoma juvenile code. This issue was not raised below, and no opportunity was offered for the introduction of evidence seeking to justify the treatment of 16 and 17 year old girls differently from boys of the same age. Under these circumstances we will not consider the question for the first time on appeal.

The judgment is reversed and the case is remanded for further proceedings in harmony with this opinion.

APPROVED BY THE COURT.