No. 47,867

STATE OF KANSAS, *Appellee,* v. ALAN LEROY GREEN, *Appellant.*

(544 P. 2d 356)

Opinion filed December 13, 1975.

*Maurice P. O'Keefe, Jr.,* of O'Keefe, Ball, O'Keefe & Lacey, of Atchison, argued the cause, and was on the brief for the appellant.

*Tracy D. Klinginsmith,* county attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal from the trial court's order declaring Alan LeRoy "Rocky" Green, age sixteen, not amenable to the care, treatment and training program available through the facilities of the juvenile court, (K. S. A. 38-808 [*b*] [Weeks]) and hence subject to prosecution as an adult for murder in the second degree. (K. S. A. 21-3402 [Weeks].)

Alan Green was born on March 23, 1958. His father and mother are separated. Alan's recent past shows he has lived with his father, both in Holton and Powhattan, his mother, both in Manhattan and Topeka, an aunt in Emporia and an uncle in Holton, shifting from one to another.

Various social workers' reports indicate Alan is of average intelligence although he has had difficulties in school. In Riley County his school difficulties resulted in his being adjudicated a truant from the Manhattan schools. As a result he was placed on probation under the supervision of the Riley County Juvenile Court Probation Office.

Another of Alan's difficulties is a drinking problem. Evidence indicates Alan and other members of his family drink intoxicating liquor in excess quantities. When drinking Alan becomes aggressive and loses his temper. On two drinking occasions Alan was involved in fights in Topeka. Alan was adjudicated a miscreant for commission of a battery and placed on probation under the Shawnee County Probation Department as a result of one fight. Alan's probation officer indicated Alan had generally obeyed the terms of this probation.

Relevant to the matter at bar, the state alleged that on June 9, 1974, Alan committed a murder in the second degree by stabbing and beating David Paul Lewis, Jr., an adult. (K. S. A. 21-3402 [Weeks].) The facts surrounding the murder are not clear. However, the record does indicate Alan had been drinking. The state initiated proceedings to have the Juvenile Court of Jackson County declare Alan a delinquent child not amenable to the care, treatment

and training program available through the facilities of the juvenile court.

Maurice P. O'Keefe, Jr., was appointed guardian ad litem and the matter was tried to the juvenile court. A social worker and a probation officer testified concerning the facts heretofore related. Mr. Keller, the assistant director of the Division of Mental Health and Retardation Services, testified as to the state juvenile facilities, particularly the Youth Center at Topeka (formerly the Boys' Industrial School). His testimony indicated youths over sixteen were admitted only if space was available, and at present the Youth Center cottages were full. He was unable to forecast when a cottage designed to house a juvenile over sixteen who had committed violent acts would be available. Furthermore very few boys over sixteen were admitted to the Youth Center, although some who were present before their sixteenth birthday stayed on at the Youth Center. Mr. Keller further testified the psychiatric facilities at Larned and Osawatomie were reluctant to accept a juvenile over sixteen who had been involved in a crime of violence.

A statement from Dr. Bonner, a psychiatrist employed by the Indian Health Service who saw Alan on three occasions in the Jackson County jail, was introduced into evidence. Dr. Bonner found no evidence of disturbed thinking or psychosis in Alan, but recommended he be placed in a setting with other boys rather than in prison.

Faced with these facts, the psychiatrist's recommendation and the lack of state facilities, the Juvenile Court of Jackson County found Alan was not a fit and proper person to be dealt with under the Kansas Juvenile Code and waived jurisdiction.

The decision of the juvenile court was appealed to the District Court of Jackson County. There the parties stipulated to the admission of the juvenile court transcript, and additional evidence concerning juvenile facilities in Kansas was received. Frank Hoge, director of the Kansas Vocational Rehabilitation Services testified his facilities would probably not admit one who had committed murder.

Robert Whitfield, executive director of United Methodists of the State of Kansas discussed the juvenile facilities owned and controlled by the United Methodist Churches. He indicated a youth over sixteen who had been adjudicated by a juvenile court of any degree of murder would not be admitted to any United Methodist facility.

Based on a *de novo* review of the juvenile court transcript and the additional evidence offered by the parties, the trial court affirmed the juvenile court and declared Alan not amenable to the care, treatment and training program available through the facilities of the juvenile court. A companion of Alan's, also charged with murder in the second degree, was declared amenable to the care, treatment and training programs available through the facilities of the juvenile court by the district court judge. However, counsel for the appellee has informed the court Alan's companion had no role in the stabbing; his only involvement was in attempting to conceal the victim's body. Furthermore, Alan's companion had no previous juvenile record.

The relevant findings and conclusions made by the trial court in a memorandum decision filed November 6, 1974, are:

"Alan Leroy Greene was born, March 23, 1958.

"It is charged that Alan Leroy Greene, on June 9, 1974, did commit an act, which if committed by an adult, would constitute murder in the second degree, in violation of K. S. A. 1973 Supp. 21-3402, a felony crime.

"Alan Leroy Greene comes from a 'broken' home, has lived with his father, his mother, and his aunt, shifting from one to the other. He quit high school in his sophomore year. He is of average intelligence. He drinks intoxicating liquor to excess and in the past has committed acts, while intoxicated, that he does not remember. He is an aggressive, athletic boy and when drinking, his aggressive behavior increases. He is an angry young man, and when drinking, his anger and hostility increases, and he loses control.

"He has been before the Juvenile Court of Riley County, Kansas for truancy from the Manhattan schools, and was probated under the supervision of the Juvenile Court Probation Officer of Riley County.

"Subject moved to Topeka, and his probation supervision was transferred to the Juvenile Court Probation Officer of Shawnee County.

"While living in Shawnee County, subject was before the Juvenile Court of Shawnee County, Kansas and adjudged a miscreant by reason of his commission of the act of battery. Again, he was probated, under the supervision of the Juvenile Court Probation Officer of Shawnee County.

"The evidence leads the court to believe and find that there is no institution of the State of Kansas to which subject may be committed, as a juvenile. If he were sentenced to the Boys Industrial School, at Topeka, Kansas, the chances of his being accepted in that institution are nil. So, the court may reasonably say that he would not be accepted. Subject is over 16 years of age and under 18 years of age, and under the law of Kansas it is only an act of grace on the part of the authorities in charge of BIS that would permit such a placement. Such admission is not reasonably to be expected at all, according to the evidence.

"By reason of the act charged, involving violence, involving homicide, there is no institution of the State of Kansas available for this age of subject, if treated as a juvenile.

"The parents and relatives of Alan Leroy Greene have no control over him; indeed, their life-style aggravates subject's problem.

"In the past, the forward looking programs and facilities of the Juvenile courts of Riley and Shawnee Counties, Kansas, have had no adequate control over subject. By comparison, the facilities locally available to the Juvenile Court of Jackson County, Kansas, are primitive.

"Subject's history indicates excessive use of alcohol, anger, anti-social behavior. His contacts with school authorities and Juvenile Courts has not been helpful. There is no reason to believe the Juvenile Court of Jackson County, Kansas, can have better success with changing subject's behavior pattern.

"The offense charged involves violence, aggressive acts, and the reports in evidence indicate it was committed after use of alcohol beverages.

"Society cannot tolerate this type of uncontrolled activity on the part of this young person.

"There is substantial evidence that Alan Leroy Greene is not amenable to the care, treatment and training program available through the facilities of the Juvenile Court, and this court so finds. There is substantial evidence that Alan LeRoy Greene is not a fit and proper subject to be dealt with under the Kansas Juvenile Code, and the court so finds.

"The exclusive, original, jurisdiction of the Juvenile Court of Jackson County, Kansas is waived; the county attorney of said county is directed to prosecute Alan Leroy Greene under the applicable criminal statute as in the case of an adult."

The appellant contends the Kansas Juvenile Code, K. S. A. 38-801 (Weeks) *et seq.*, is unconstitutional on two grounds. First the appellant asserts a deprivation of equal protection by arbitrary discrimination between boys sixteen years of age or older but less than eighteen years of age and those under sixteen years of age. We disagree. A statute providing that an accused over sixteen years of age may be treated as a juvenile does not deny equal protection of the laws. (*McMahon v. Municipal Court*, 6 Cal. App. 3d 194, 85 Cal. Rptr. 782 [1970]; and *In re Welfare of Burtts*, 12 Wash. App. 564, 530 P. 2d 709 [1975].) No valid challenge can be made because the Kansas Legislature could, in the exercise of its wisdom, withhold the protection of the doctrine of *parens patriae* from all juveniles exceeding fifteen years of age. What the legislature may do absolutely it may do conditionally, providing the conditions prescribed are applicable in like manner to every child in the class affected. (*Correia, In re.*, 104 R. I. 251, 243 A. 2d 759 [1968]; and *West Coast Hotel Co. v. Parrish*, 300 U. S. 379, 400, 81 L. Ed. 703, 57 S. Ct. 578.)

The appellant argues K. S. A. 38-826 (*a*) (6) (Weeks) is an unconstitutional delegation of power without adequate standards. It is contended there are no standards or guidelines for the exercise of

the director's power to admit or deny admission of boys between the ages of sixteen and eighteen to the Youth Center at Topeka or to any other facility for treatment, care or training. The argument that no standard is provided to determine a child's amenability ignores the fact the standard is expressly stated to be whether the child is "amenable to the care, treatment and training program available through the facilities of the juvenile court" in K. S. A. 38-808 (*b*). In *State, ex rel., v. Owens,* 197 Kan. 212, 225, 416 P. 2d 259, this court noted "to require more precision than this would be impracticable." The factors entering into a juvenile judge's decision on disposition of a child brought before him are many and varied. This was recognized in *State v. Doyal,* 59 N. M. 454, 460, 286 P. 2d 306 (1955), recently reaffirmed in *State v. Jimenez,* 84 N. M. 335, 503 P. 2d 315 (1972), where similar attacks were made. (See also A Juvenile, petitioner, ____ Mass. ____, 306 N. E. 2d 822 [1974]; *Lewis v. State,* 86 Nev. 889, 478 P. 2d 168 [1970]; and *Clemons v. State,* ____ Ind. App. ____, 317 N. E. 2d 859 [1974].)

The appellant next argues the court erred in finding he was not amenable to the juvenile court through treatment at state or private facilities. If substantial evidence is present that the appellant is not amenable to the care, treatment and training program available through the facilities of the juvenile court, it is necessary to affirm the district court. The term "substantial evidence" has come to have a well defined meaning in our law. It is said to be evidence possessing something of substance and relevant consequence, and which furnishes a substantial basis of fact from which the issues tendered can be reasonably resolved. (*In re Templeton,* 202 Kan. 89, 94, 447 P. 2d 158.)

An indication of the proper factors for the district court to examine in determining a juvenile's amenability to treatment, and for this court to examine in searching for substantial evidence, is found in the case of *In re Patterson, Payne & Dyer,* 210 Kan. 245, 499 P. 2d 1131. There three juveniles were charged with first degree murder in a liquor store robbery. The district judge improperly found all three juveniles were not amenable to treatment in the juvenile court based largely on the crime involved and the fact the Boys' Industrial School (now Youth Center at Topeka) would not accept the three juveniles. In the *Patterson* case this court held that misconduct is not the controlling factor for the court to examine, saying:

"The gravity of the misconduct alleged is not the controlling factor in determining the proper disposition of a juvenile offender. Such disposition should be tailored to the offender, not the offense, so as to best serve the child's welfare and the best interests of the state." (Syl. ¶ 2.)

In *Patterson* the court enumerated some factors which distinguished it from the case at bar. There the record did not indicate that any social records or staff reports were received. Here the social worker's report, the probation officer's report and a psychiatrist's report are present.

In the *Patterson* case there were no prior juvenile files showing unsuccessful efforts at rehabilitation. Here the contrary is true. The record indicates failure by the appellant's relatives and by the probation departments of two counties to effectively control the appellant's actions. As the district court found:

"In the past, the forward looking programs and facilities of the Juvenile courts of Riley and Shawnee Counties, Kansas, have had no adequate control over subject. By comparison, the facilities locally available to the Juvenile Court of Jackson County, Kansas are primitive."

In the *Patterson* case the nature of Patterson's prior delinquency, its date and the success or failure of his probation did not appear. Again the contrary is true here. The record is complete with references to prior delinquent acts of the appellant, their dates and the failure of probation.

In the *Patterson* case the cause, nature and result of counseling with the offenders was not before the court. Here the testimony of the probation officer shows what rehabilitative efforts had failed.

In the *Patterson* case there was no evidence of persistent prior misconduct. Here the record discloses at least three instances of prior misconduct, and a history of drinking problems.

In the *Patterson* case no effort was made to differentiate among the three juveniles as to culpability for the particular offense, any more than there was as to their past history or future potential. Here the district court found the appellant's companion amenable to the juvenile court based on his non-culpability in the homicide itself, and based on the companion's past history of good conduct.

Finally in the *Patterson* case this court indicated the unavailability of Boys' Industrial School, if shown, would be a proper factor for the court's consideration but should not be controlling. Other possible dispositions were to be considered, including other institutions within or without the state which might be willing to accept the juveniles, the availability of public or private sources

of treatment recommended by the examining psychiatrist and whether any alternative available would best serve the juveniles' welfare and the best interests of the state. Here the state institutions were examined and found not available, a fact which this court has consistently decried since 1966. In this case the private institutions provided by the United Methodists were also examined. The appellant suggests all private institutions should be examined. But such a burden should not be placed on the district courts by counsel who cannot otherwise affirmatively suggest any facilities for his client. Based on the large number of juvenile crimes and the homicide involved in this case, the probability that available facilities exist for the appellant is very remote.

The Court of Appeals for the District of Columbia has indicated both counsel and the court have a vital role to play in the exploration of possible dispositions, short of waiver, by which the best interests of the juvenile and the state might be secured. In *Haziel v. United States*, 404 F. 2d 1275 (D. C. Cir. 1968) the court held:

". . . The child's advocate should search for a plan, or perhaps a range of plans, which may persuade the court that the welfare of the child and the safety of the community can be served without waiver. And the court itself cannot remain inert. It also has a duty to utilize its 'facilities, personnel and expertise for a proper determination of the waiver issue.' . . ." (p.1279.)

(See also, *United States v. Howard*, 449 F. 2d 1086 [D. C. Cir. 1971].) Based on these cases, it cannot be said the district court must endlessly search for every possible disposition short of waiver.

K. S. A. 38-808 (*b*) requires substantial evidence that the juvenile is not amenable to the care, treatment and training programs available *through the facilities of the juvenile court*. It does not simply require a finding the child is not amenable to care, treatment and training, but refers to the *existing facilities* of the juvenile court. The need for additional juvenile facilities should be obvious to all. (See *In re Patterson, Payne & Dyer*, supra.) But this court cannot sit as a super-legislative body and dictate how scarce tax dollars must be spent.

Finally the appellant contends the trial court overlooked social workers' reports suggesting psychological testing and erred in not ordering psychological testing before carrying on further proceedings. The comprehensive memorandum opinion from the district court indicates it did not overlook the social workers' reports. Recommendations concerning psychological testing are not binding on the district court. Under statutes granting the juvenile court

discretion to waive jurisdiction, other states have refused to require testimony from child psychiatrists directed toward prospects for the juvenile's rehabilitation and the propensity for committing similar crimes in the future. The determination that it would be contrary to the best interests of the juvenile or the public, after a proper examination of relevant criteria on the issue of amenability, was sufficient justification for waiver of jurisdiction under the statute without a child psychiatrist's report in *Mikulovsky v. State*, 54 Wis. 2d 699, 196 N. W. 2d 748 (1972). Where a statute required a "full investigation," the absence of a psychiatric report did not nullify the validity of an investigation where other reports were presented to the court in *United States v. Caviness*, 239 F. Supp. 545 (D. D. C. 1965).

Testimony and reports from psychologists, local mental health centers, private psychiatrists, or any other person or agency with whom the juvenile has had contact relevant to his mental state will, however, add support to the trial court's determination of amenability. Here the report of Dr. Bonner reflects no evidence of disturbed thinking or psychosis and thus supports the trial court's determination.

An examination of the record discloses substantial evidence to support the findings of the trial court and its conclusions based thereon.

Having considered the appellant's contentions herein and finding no legal basis for relief, the judgment of the lower court is affirmed.