No. 51,111

In the Interest of CHARLOTTE ANN WHITE, A Female Minor, *Appellant.*

(610 P.2d 1114)

Opinion filed May 10, 1980.

*Michael H. Morgan,* of Poe, Madden, Green & Morgan, of Wichita, argued the cause and was on the brief for appellant.

*R. Michael Jennings,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, *Vern Miller,* district attorney, and *James D. Turner,* assistant district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by Charlotte Ann White from an order of the juvenile department of the Sedgwick County District Court (juvenile court or trial court) waiving its jurisdiction and referring her to stand trial as an adult pursuant to K.S.A. 1979 Supp. 38-808. This is the second appearance of this case before this court. See *In re White,* 224 Kan. 717, 585 P.2d 1046 (1978), (White I).

The State in a petition filed with the juvenile court alleged that on August 27, 1977, Charlotte Ann White shot and killed one James Wofford. Appellant was seventeen years old at the time and was charged with an act of delinquency which, if committed by an adult, would have been a felony (first-degree murder). On September 8, 1977, a referral hearing was held to determine whether Charlotte was a fit and proper person to be dealt with under the Kansas juvenile code. The juvenile court determined she was not and directed she be prosecuted as an adult. That decision was reversed in *White I* due to a failure of the State to produce any evidence in support of its position that she was not a fit and proper person for juvenile proceedings. Following our decision in *White I,* a second hearing was held by the juvenile court wherein the State did produce evidence in support of its position. On March 20, 1979, the court once again found that Charlotte was not a fit and proper person to be dealt with under the juvenile code and directed that she be prosecuted as an adult. It is this second referral determination which is now before this court.

Charlotte was born June 30, 1960, and at the time of the alleged crime and the first hearing to determine fitness to be dealt with under the juvenile code was seventeen years of age. She was eighteen when *White I* was decided and is now nearly twenty years old. To further complicate matters, following the first certification to try Charlotte as an adult the criminal department of the district court proceeded with criminal charges while the appeal on the initial referral determination was pending in this court. Charlotte was tried before a jury for first-degree murder. During the trial she entered into plea negotiations with the district attorney and on June 2, 1978, entered a plea of guilty to second-degree murder. At that time she lacked 28 days of being eighteen years of age. Sentencing on the plea was apparently

deferred pending the decision in *White I* and thereafter the outcome of the second hearing before the juvenile court. Following the March 20, 1979, juvenile court decision, Charlotte was sentenced on April 27, 1979, to the custody of the Secretary of Corrections for a period of not less than five years nor more than life pursuant to K.S.A. 21-4501(*b*) and 75-5229. As a firearm had been used in the homicide the provisions of K.S.A. 1978 Supp. 21-4618 were invoked. We note at the outset that neither party has raised any question on this appeal as to the propriety or validity of the criminal proceedings in district court and such issues are not now before this court. In addition, no question has been raised whether Charlotte's plea of guilty and failure to seek a stay of the criminal proceedings constitute a waiver of her objection to the juvenile court proceedings. For an excellent discussion of the problems raised by subsequent criminal proceedings following an erroneous referral by the juvenile court see Six and Reeves, *Waiver of Juvenile Court Jurisdiction in Kansas,* 22 Kan. L. Rev. 193 (1974).

Two points are raised by Charlotte in this appeal. She contends (1) the trial court erred by applying the wrong test or standard thus denying her due process of law, and (2) the determination to waive juvenile jurisdiction and refer Charlotte for trial as an adult was not supported by substantial evidence.

K.S.A. 1979 Supp. 38-808(*b*) provides:

"(*b*) Notwithstanding any provisions of the Kansas juvenile code or any other law of this state to the contrary, whenever a petition has been filed pursuant to the Kansas juvenile code alleging that a child is, by reason of violation of any criminal statute, a delinquent or miscreant child described in K.S.A. 1976 Supp. 38-802, and that the child was sixteen (16) years of age or older at the time of the alleged commission of such offense and the petitioner, or the county or district attorney upon motion made prior to the hearing on the petition, alleges that such child is not a fit and proper subject to be dealt with under the Kansas juvenile code, the court shall immediately set a time and place for a hearing to determine if such child is a fit and proper person to be dealt with under the Kansas juvenile code. Such hearing shall be held prior to the hearing on the petition and shall conform to the requirements for notice and appointment of a guardian *ad litem* as provided by K.S.A. 1976 Supp. 38-815b, for detention hearings. Upon the completion of the hearing and a finding that the child was sixteen (16) years of age or older at the time of the alleged commission of the offense, the court may make a finding, noted in the minutes of the court, that the child is not a fit and proper subject to be dealt with under the Kansas juvenile code. In determining whether or not such finding should be made, the court shall consider each of the following factors: (1) Whether the seriousness of the alleged offense is so great that the protection of the

community requires criminal prosecution of the child; (2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner; (3) the maturity of the child as determined by consideration of the child's home, environment, emotional attitude and pattern of living; (4) whether the alleged offense was against persons or against property, greater weight being given to offenses against persons, especially if personal injury resulted; (5) the record and previous history of the child; (6) whether the child would be amenable to the care, treatment and training program for juveniles available through the facilities of the court; and (7) whether the interests of the child or of the community would be better served by criminal prosecution of the child. The insufficiency of evidence pertaining to any one or more of the factors listed in this subsection shall not in and of itself be determinative of the issue. Written reports and other materials relating to the child's mental, physical, educational and social history may be considered by the court, but the court, if so requested by the child, the child's parent or guardian or other interested party, shall require the person, persons or agency preparing the report and other material to appear and be subject to both direct and cross-examinations."

The seven factors to be considered by the court were included in an amendment of the statute as a result of the decision in *Kent v. United States,* 383 U.S. 541, 16 L.Ed.2d 84, 86 S.Ct. 1045 (1966).

In support of her first point, appellant contends that the juvenile court at the second referral hearing applied the wrong time standard in determining her fitness to be dealt with under the juvenile code. Appellant argues that when this court in *White I* reversed the original decision of the juvenile court to waive jurisdiction the court at the second hearing was obligated to consider de novo her fitness as of the time of the original hearing. Appellant bases her argument largely upon the holding in *White I* that "the order of the district court must be reversed and the case remanded for a new hearing on the issue of whether she *was* a fit and proper person to be dealt with under the Kansas Juvenile Code." 224 Kan. at 719. (Emphasis added.) We do not interpret this statement from *White I* as a determination that the date of the initial hearing is controlling. The statute is not entirely clear and the question is one of first impression for this court. Appellant contends that at the hearing in March of 1979, when Charlotte was nearly 19 years old, the court should have considered the evidence of her fitness to be dealt with under the juvenile code only as it would apply to the conditions which existed at the time of the original hearing in September, 1977, when she was only 17 years old. Appellant argues that to apply the evidence to conditions as they exist at the time of the second hearing is fundamentally unfair and violates due process of law.

Judge Morrison, an experienced juvenile judge, in commenting on the question stated:

"I think the test is whether the Court at this point finds that she is either now or was at that time a fit and proper subject to be dealt with under the Kansas Juvenile Code."

The learned trial judge obviously recognized that both hearing times are important and must be considered. We concur. While appellant's argument appears logical at first blush, the problem is that the fitness of the person to be dealt with under the juvenile code is not a static condition but a constantly changing one that cannot be rolled back. Assuming, for the sake of argument, that the evidence reveals that Charlotte was a fit and proper person for juvenile proceedings at the time of the first hearing, we cannot arbitrarily say that she would continue to be so two years later. If the court determines in the later hearing that the evidence, when applied as of the time of the original hearing, justifies the original referral for trial as an adult no problem arises and such a determination controls. *Kent v. United States*, 383 U.S. at 564-565. On the other hand, if the court determines that the juvenile was originally a fit and proper subject to be dealt with under the juvenile code, then the trial court must go one step further and determine whether such fitness still exists as of the date of the later hearing. If, due to the lapse of time and the changes brought about as a result thereof, the person is no longer a fit and proper person to be dealt with in juvenile proceedings, the existing circumstances at the time of the later hearing must control. There would be nothing to be gained for either the State or the individual to attempt to deal with the person under the juvenile code if such proceedings would no longer be helpful to or in the best interests of the individual. The statute requires a hearing and, after a consideration of the factors enumerated in the statute, the court "may make a finding, noted in the minutes of the court, that the child *is* not a fit and proper subject to be dealt with under the Kansas juvenile code." (Emphasis added.) K.S.A. 1979 Supp. 38-808(*b*). The statute contemplates that if there has been a change in the person's fitness to be dealt with under the juvenile code, the fitness of the individual at the time of the hearing must ultimately be the controlling time factor. We are not called upon and do not here decide the proper disposition of the criminal

proceedings if Charlotte had been found fit to be dealt with under the juvenile code as of the time of both hearings.

The trial court, in setting a standard in which it considered the conditions as they existed at the time of the original hearing and at the time of the current hearing, properly applied the requirements of the statute. Other courts have considered similar situations and have had considerable difficulty in adopting an appropriate time standard to be applied when the results of a referral hearing are set aside on appeal several years later. See *Kemplen v. Maryland,* 428 F.2d 169 (4th Cir. 1970); *Haziel v. United States,* 404 F.2d 1275 (D.C. Cir. 1968); *Kent v. United States,* 401 F.2d 408 (D.C. Cir. 1968); *Kent v. United States,* 383 U.S. 541, 16 L.Ed.2d 84, 86 S.Ct. 1045 (1966); and *Black v. United States,* 355 F.2d 104 (D.C. Cir. 1965). In the instant case a review of the evidence, as hereinafter set forth, indicates that if the evidence had been submitted at the September, 1977, hearing the court's determination that Charlotte was not a fit and proper person to be dealt with under the juvenile code would have been upheld. The evidence would support such a determination as of the time of either hearing. We find no failure of due process in the later proceedings and appellant's first point is without merit.

The second point on appeal is that the decision to waive juvenile jurisdiction and refer Charlotte for prosecution as an adult was not supported by substantial evidence. We have held that the trial court's decision to waive juvenile jurisdiction must be supported by substantial evidence which is defined in *In re Ferris,* 222 Kan. 104, 563 P.2d 1046 (1977), as:

"The term 'substantial evidence' has come to have a well-defined meaning in our law. It is said to be evidence possessing something of substance and relevant consequence, and which furnishes a substantial basis of fact from which the issues tendered can be reasonably resolved. (*State v. Green,* supra at 443 [218 Kan. 443]; and *In re Templeton,* supra at 94 [202 Kan. 94].)" p. 111.

At the March, 1979, hearing the State presented the testimony of three witnesses. A transcript of testimony given by one Winford Burkhalter during appellant's criminal trial was accepted in evidence without material objection from appellant. Burkhalter testified in the jury trial that he was the owner of the C & W Cafe in Wichita; during the early morning hours of August 27, 1977, while sitting in front of his business establishment, Charlotte and James Wofford came out of the cafe arguing; Charlotte was telling

Wofford to keep out of her business; Wofford replied he didn't know what she was talking about; Charlotte grabbed Wofford by the shirt, pushed him and again stated she didn't want him messing in her affairs; Charlotte returned to the cafe, obtained her purse, and again emerged from the building and engaged Wofford in further argument; after further conversation, she drew a pistol from her purse, told Wofford she was not scared of him, waved the pistol back and forth, and then shot Wofford; Charlotte again returned to the cafe and upon emerging once again told Wofford that if he didn't mind his own business she would kill him next time; and then Charlotte departed from the premises.

Dennis Shumate, Superintendent of the Youth Center at Beloit, testified the center was the only state supported and operated facility serving adolescent females in the state; described the treatment and programs available; stated the normal length of stay for girls at Beloit was 10 to 12 months; the center could give treatment to girls until they were 21 years old; the target age for inmates was 15 - 16 years of age but older girls could be accommodated; the center had room available at the time; and he was not acquainted with Charlotte White.

Detective Louis Brown of the Wichita Police Department testified he spoke with Charlotte twice on the morning of August 27, 1977, after she was taken into custody and that Charlotte was advised of her *Miranda* rights and consented to make a statement. He then testified as to what Charlotte told him on the morning of August 27, 1977. According to Brown, she stated she had some minor problems in Oklahoma such as misdemeanor stuff and runaway; she had been placed in a girl's school for running away; she lived with her mother in Oklahoma City, but had left home at age 15 and moved to Tulsa where she worked in a chicken place for awhile; she then moved to Wichita where she had been living for about a year; she lived in Wichita with a 37-year-old man named Glendon Tunnels; Tunnels was supporting her and she was not working or attending school. Lt. Brown then testified as to her version of the shooting of Wofford, including her statement to Wofford after the shooting, "I hope you die," or words to that effect. Charlotte's version of the shooting, as told by Lt. Brown, varied considerably from that of the only eyewitness, Burkhalter.

Appellant then proceeded to present her evidence, including testimony by one Darlene M. Coffelt, of the Sedgwick County jail

ministry, who described the Teen Challenge Program in Denver, Colorado, which had been attended by Charlotte for about a month prior to the hearing. The Program considered Charlotte a satisfactory prospect and was willing to take her for a year if the court so ordered.

Dr. Jack Knopps, a psychologist with Topeka State Hospital, testified as to tests administered to Charlotte. He was of the opinion she had an infantile personality; would need several years of treatment in an institutional setting and did not think she would be benefitted by being subjected to the adult prison system.

James Morse, a psychiatric social worker, testified he first met Charlotte in December, 1976, when he counseled her after an overdose of drugs rendered her unconscious. He continued to see her on an out-patient basis until August, 1977; considered her immature; felt she needed a structured environment; and was of the opinion the adult prison system would be detrimental.

Willie Howard, a physician's assistant with the Sedgwick County jail, described at least three suicide attempts by Charlotte during her confinement and he considered her mental development to be like that of a twelve or thirteen-year-old.

Delores Jones testified she had known Charlotte White since she first came to Wichita and she considered her to be immature and very childish.

Edith A. Bangle, a matron at the Sedgwick County jail, testified she had contact with Charlotte over a nineteen-month period during which Charlotte was incarcerated. She considered Charlotte to have been very immature, very hostile and very upset when she first met her but felt she had made a gradual change for the better. She also testified she had some discipline problems with Charlotte during the period.

Appellant took the stand and testified about the incidents surrounding the shooting of James Wofford. She testified she knew Wofford had a gun in his car; that he was going to get the gun; she carried a gun in her purse; she had been in an argument with Wofford; that she was not going to go to bed with Wofford; Wofford was cussing and hitting her and when he started for his car she shot him. The gist of her testimony was that she shot Wofford in self-defense.

Following final arguments the court made a lengthy statement

explaining its decision that Charlotte was not a fit and proper person to be dealt with under the juvenile code. The trial judge went through all of the seven factors set forth in K.S.A. 1979 Supp. 38-808(*b*) and the evidence relating to each. The written journal entry filed by the court reads:

"JOURNAL ENTRY OF REFERRAL

"On this 20th day of March, 1979, the above captioned matter comes on for hearing upon the Motion of the State of Kansas for Waiver of Jurisdiction pursuant to K.S.A. (1978 Supp.) 38-808(b).

"The State appears by Charles E. Millsap, Assistant District Attorney for Sedgwick County, Kansas, and the juvenile, Charlotte Ann White, appears in person and by her Court appointed counsel, Michael H. Morgan, a regularly practicing attorney in Wichita, Sedgwick County, Kansas. The Court finds that the matter is properly before it for hearing, that all interested parties have been properly notified pursuant to K.S.A. (1978 Supp.) 38-808(b), and that the Court has jurisdiction to hear the Motion before it.

"Thereupon, the State presents its evidence and argument on the Motion. Counsel for the juvenile then presents evidence and argument in opposition to the State's Motion.

"Thereafter, the Court, after examining the Court's files and hearing the evidence and arguments of counsel concludes that the juvenile, Charlotte Ann White, is not a fit and proper subject to be dealt with under the Juvenile Code of the State of Kansas. In support thereof the Court finds that the juvenile was 17 years of age at the time of the alleged offense and furthermore makes the following findings:

1) That the act alleged in the petition and as explained by the evidence is one of the most serious violations defined in the Kansas Criminal Code;

2) That the act alleged in the petition was committed in a violent, willful, and aggressive manner;

3) That the juvenile, judged by an emotional standard appears immature, but by examining her pattern of living, home, and environment indicates that she had for some time adopted the lifestyle of an adult;

4) That the offense was committed against a person and that death to the victim resulted therefrom;

5) That there is no great amount of evidence concerning a court record of the juvenile other than reference to some minor offenses in Oklahoma along with evidence of a previous probation during the time prior to the juvenile leaving Oklahoma;

6) That while the psychological evidence tends to disagree, considering the juvenile's mobility and self-sufficient life-style, along with her age, Charlotte Ann White is not amenable to the care, treatment and training programs for juveniles available through the facilities of the Court;

7) That the best interests of the juvenile and of the community are best served by a viable rehabilitation program and the Court finds this is much more likely to occur through criminal prosecution.

"IT IS THEREFORE BY THE COURT ORDERED that the State's attorney prosecute the said Charlotte Ann White under the applicable criminal statutes of the State of Kansas and thereafter dismiss the petition filed pursuant to the Kansas Juvenile Code.

"IT IS FURTHER ORDERED BY THE COURT that the appearance bond given by the juvenile and her surety on February 16, 1979, be continued in effect and that as an added condition to said bond, Charlotte Ann White, is ordered to appear at the criminal docket call in the Criminal Department of this Court at 3:00 p.m. on March 28, 1979. The Clerk of the Juvenile Department is ordered to deliver the original copy of the bond to the Clerk of the Criminal Division of the Court."

It should be noted that the statute specifically provides "[t]he insufficiency of evidence pertaining to any one or more of the factors listed in this subsection shall not in and of itself be determinative of the issue." K.S.A. 1979 Supp. 38-808(*b*). The evidence reveals that Charlotte left home at the age of fifteen and had been self-sufficient since that time. As stated by the trial judge her ability to cope with the adult world over a long period of time tends to dispute the expert testimony as to her immaturity. By her own testimony Charlotte admitted that she regularly carried a firearm in her purse and she was voluntarily living with and being supported by a man twenty years her senior. The opinion of the experts that the adult prison system would not be beneficial to Charlotte and in some opinions would be detrimental is a factor to be considered but would not be controlling of the trial court's decision. It is doubtful that the adult prison system, as it exists today, is beneficial to very many of the inmates who are unfortunate enough to be exposed to it. The decision of the juvenile division of the district court is supported by substantial evidence and must be affirmed. See *In re Ferris,* 222 Kan. 104, 563 P.2d 1046 (1977); *In re Harris,* 218 Kan. 625, 544 P.2d 1403 (1976); *In re Patterson, Payne and Dyer,* 210 Kan. 245, 499 P.2d 1131 (1972); and *In re Templeton,* 202 Kan. 89, 447 P.2d 158 (1968).

We have carefully considered all authorities and arguments propounded by the appellant.

One final matter remains for our consideration. Appellant's counsel, appointed to represent Charlotte, who is an indigent, has asked for an assessment of fees and costs against Sedgwick County as provided by law. We find the request to be proper. The appellant's expense for transcripts and briefs on appeal, together with a reasonable attorney fee for her counsel, are hereby assessed as costs of this appeal to be paid by Sedgwick County from the county general fund pursuant to K.S.A. 1979 Supp. 38-834b.

See also *In re Brehm,* 3 Kan. App. 2d 325, 594 P.2d 269 (1979); *In re Harris,* 218 Kan. 625, 544 P.2d 1403 (1976).

The judgment is affirmed.