THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MICHAEL MURPHY *et al.*, Defendants-Appellants.

First District (5th Division)    No. 80-2108

Opinion filed November 30, 1981.

James J. Doherty, Public Defender, of Chicago (Frances Sowa and Dennis Urban, Assistant Public Defenders, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Casimir J. Bartnik, and Dean P. Karlos, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendants appeal from an order entered after a hearing which transferred them from the juvenile to the adult division of the Department of Corrections pursuant to section 3—10—7(a) and 5—8—6(c) of the Unified Code of Corrections (the Code) (Ill. Rev. Stat. 1979, ch. 38, pars. 1003—10—7(a), 1005—8—6(c)). Both defendants contend that those statutory provisions are unconstitutionally vague, and defendant Moore additionally contends that the doctrine of collateral estoppel precluded the consideration of ultimate facts determined in prior hearings and, because no new evidence was presented, the transfer order was improper.

The record discloses that defendants were juveniles, tried as adults and convicted after pleas of guilty to the crimes of rape, deviate sexual assault, armed robbery, and aggravated kidnapping. They were sentenced to the Department of Corrections for 14 years on each charge, to run concurrently. Thereafter, hearings were held by the court on three separate petitions filed by the State, after defendants reached age 17, to transfer one or both of them from the Illinois Youth Center at Joliet[1] to the adult division of the Department of Corrections, pursuant to sections 3—10—7(a) and 5—8—6(c) of the Code.

The first such hearing was in January 1980 on a petition to transfer Moore, at which the trial court first denied a motion to declare those two sections unconstitutional—following which Marvin Jones, a youth super-

---

[1] The maximum security institution for male juveniles.

visor at the youth center, testified that in September 1979 he caught Moore breaking through a wall in an escape attempt and, because Moore had made numerous previous escapes from another institutional center, the witness said he posed a security threat to the security center. A corrections counselor (Mrs. Hornburg) testified that Moore's case file disclosed that he had escaped five times from two Illinois youth centers, and she gave an opinion that "he should be transferred to the adult division based upon his past behavior because he is a security risk." In denying this petition, the court stated in effect that Moore was being given another chance but would be transferred if he again violated any of the youth center regulations.

A second hearing was held on March 24, 1980, on a new petition to transfer Moore, and again a motion attacking the constitutionality of the same two sections was denied. Thereafter, youth supervisor Robert Clayton testified that on March 12, 1980, he found a hacksaw blade in Moore's cell and noticed that bars on his window had been cut through. The State offered, through witness Betty Harris (a corrections counselor) three documents pertaining to the conduct of Moore on March 12, 1980, which she said were records kept in the regular course of the business of the Department and were under her supervision. The court, however, refused admission of the report and then denied a motion to transfer.

A third transfer hearing was held in June 1980 on a petition of the State to transfer both Moore and Michael Murphy to the adult division. The court again refused to find unconstitutional the transfer sections in question. Defense counsel then made a motion to exclude the documents concerning Moore which had been offered and refused at the prior hearing and to strike as to Moore certain paragaphs of the petition to transfer on the basis that they contained matter ruled on at the prior hearings. The court made no specific ruling on the motions but stated that he would consider the evidence received at the prior hearings with any new evidence that may be presented.

Mrs. Hornburg then testified from institution records that Murphy had made three escape attempts, fought with other students, and was disrespectful to staff members. Lloyd Gaston, a youth supervisor, testified on January 31, 1980, he had opened a door to let a student in when Murphy and another student attempted to break out. Murphy was carrying a steel pipe and, in the ensuing struggle with him, the witness injured his shoulder, neck, and lower back. The court, after stating that it mistakenly refused to admit at the March hearing the three documents concerning Moore's conduct, denied a motion of Moore for a directed finding and ordered both defendants to be transferred to the adult division. This appeal followed.

OPINION

Defendant first contends that sections 3—10—7(a) and 5—8—6(c) of the Unified Code of Corrections are unconstitutionally vague because they fail to provide standards to guide judicial discretion. The statutes provide as follows:

"§3—10—7. Interdivisional transfers.

(a) In any case where a juvenile was originally committed to the Juvenile Division under Section 5—8—6, the Department of Corrections shall, within 30 days of the date that the juvenile reaches the age of 17, send formal notification to the sentencing court and the State's Attorney of the county from which the juvenile was sentenced indicating the day upon which the juvenile offender will achieve the age of 17. Within 90 days of receipt of that notice, the sentencing court shall conduct a hearing to determine whether or not the juvenile shall continue to remain under the auspices of the Juvenile Division or be transferred to the Adult Division of the Department of Corrections."

"§5—8—6. Place of Confinement.

* * *

(c) * * * The committing court shall retain jurisdiction of the subject matter and the person until he or she reaches the age of 21 unless earlier discharged. However, upon request of the Juvenile Division of the Department of Corrections after a person has reached 17 years of age, the court may conduct a hearing with opportunity to the offender to be heard and defend and order the person transferred or committed to the Adult Division of the Department of Corrections." Ill. Rev. Stat. 1979, ch. 38, pars. 1003—10—7(a), 1005—8—6(c).

■■ Although the constitutionality of these sections has not previously been addressed by any court, it appears that there have been determinations with respect to the constitutionality of other statutes requiring dispositional hearings for the transfer of juveniles to be tried as adults under the Juvenile Court Act, and we believe many of the principles underlying those decisions are helpful here. Initially, we note that the Supreme Court has held that juvenile dispositional hearings "must measure up to the essentials of due process and fair treatment." (*Kent v. United States* (1966), 383 U.S. 541, 562, 16 L. Ed. 2d 84, 98, 86 S. Ct. 1045, 1057), and that the standard for determining due process requirements in juvenile proceedings is "fundamental fairness" (*McKeiver v. Pennsylvania* (1971), 403 U.S. 528, 29 L. Ed. 2d 647, 91 S. Ct. 1976) which, however, does not require that statutes governing juvenile dispositional hearings prescribe a mathematical formula to guide judicial discretion (*People v.*

*Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366; *People v. Cater* (1979), 78 Ill. App. 3d 983, 398 N.E.2d 28, *appeal dismissed* (1980), 449 U.S. 802, 66 L. Ed. 2d 6, 101 S. Ct. 47).

The court, in *Kent,* considered as constitutional juvenile statutes which afford a judge a "substantial degree of discretion as to the factual considerations to be evaluated, the weight to be given them and the conclusion to be reached." *(Kent v. United States* (1966), 383 U.S. 541, 553, 16 L. Ed. 2d 84, 93, 86 S. Ct. 1045, 1053.) Although the juvenile transfer statute under scrutiny in *Kent* contained suggested criteria for transferring juveniles to adult court, subsequently in *Breed v. Jones* (1975), 421 U.S. 519, 537, 44 L. Ed. 2d 346, 360, 95 S. Ct. 1779, 1790, the court, after pointing out that flexibility and formality are the unique goals of the juvenile system, stated that "the Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court." Such language leads us to conclude that a precise set of criteria is not constitutionally compelled nor in line with the goals of the juvenile court system.

Moreover, the effects of a dispositional hearing to transfer a juvenile from a youth correctional center to an adult facility differ from those involving a transfer from juvenile court to a court of general criminal jurisdiction where the transfer was considered in *Kent v. United States* to be a critically important proceeding. The need for criteria in interdivisional transfer hearings such as in the instant case is considerably less, since guilt has already been determined and the sole question left to the discretion of the court under the statutory provisions concerns whether the juvenile's behavior is such that he should be transferred to an adult institution. The circumstances of each such case will necessarily differ substantially, and the necessary facts potentially bearing on the decision to transfer could not, practically speaking, be specifically identified by statute. In this regard, it is noteworthy that defense counsel, who insisted on oral argument that specific guidelines be included in the transfer sections, could not suggest any appropriate criteria. It appears to us that the legislature intended only that the court act fairly and impartially with regard to the decision to transfer a juvenile to adult facilities under the transfer sections in question. Accordingly, we are of the opinion that those sections are not unconstitutionally vague.

Moore also contends that under the doctrine of collateral estoppel, the facts determined at the first two hearings should not have been considered at the June hearing, and because no new evidence was received at that hearing he argues that his transfer to the adult division should be vacated. We disagree, as the record discloses that new evidence was considered.

■■ At the March hearing, the court refused to admit three documents

pertaining to the conduct of Moore which Betty Harris testified were records kept in the regular course of that Department's business. Those documents were an adjustment committee summary which Harris said concerned an incident in which a student was allegedly involved and placed in segregation, a student[2] violation report written by an employee who witnessed an infraction by a student, and a letter written by another student concerning the March 12 escape attempt by Moore. At the June hearing, the trial court stated that it had mistakenly refused those documents in March and that he would consider the information contained therein. We agree that the documents were mistakenly refused at the March hearing as they appear to have been records kept in the regular course of the Department's business and, not having been previously received or considered by the trial court, they were new evidence at the June hearing. The objection of defendants that the documents were hearsay and should not have been considered by the court at the June hearing is not well taken, as in an interdivisional transfer hearing hearsay is admissible. *People v. Henderson* (1976), 39 Ill. App. 3d 1065, 351 N.E.2d 231.

Moreover, even if new evidence was not submitted at the June hearing, we find no merit in the contention of plaintiff that the trial court "was estopped from ordering Frank Moore's transfer."

■■■ The concept of collateral estoppel is applicable where "an issue of ultimate fact has once been determined by a valid and final judgment" and, in such case, that issue cannot be relitigated between the same parties. (*Ashe v. Swenson* (1970), 397 U.S. 436, 443, 25 L. Ed. 2d 469, 475, 90 S. Ct. 1189, 1194.) While a judgment or order, to be final, need not dispose of all the issues presented, it must terminate the rights of the parties either upon the entire controversy or upon some definite and separate part thereof. *Village of Niles v. Szczesny* (1958), 13 Ill. 2d 45, 147 N.E.2d 371.

■■ The granting of a petition to transfer was held to be a final judgment and appealable in *People v. Henderson*, apparently on the basis that the rights of the parties on the issue as to whether defendant in that case should remain in the juvenile division were terminated by the order transferring him to the adult division of the Department of Corrections. However, where a petition for an interdivisional transfer has been denied, no such finality occurs as no rights terminated since the issue as to whether such a transfer should be effected remains open. In this regard, we note that defendant does not contend that the Department is limited to a single petition—only that the June petition was improperly granted because no new evidence was presented. Under section 5—8—6(c), the committing court retains jurisdiction of the subject matter and of the juvenile until he

---

[2] Persons committed to the youth center are called "students."

or she reaches age 21, unless earlier discharged, and we agree that additional petitions to transfer may be filed to present new evidence. Because the denials of the January and March petitions lacked the necessary finality, the concept of collateral estoppel has no application.

We affirm the order transferring defendants to the adult division of the Department of Corrections.

Affirmed.

MEJDA and WILSON, JJ., concur.