659 P.2d 912

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**John DOE, Defendant-Appellant.**

No. 5882.

Court of Appeals of New Mexico.

Feb. 1, 1983.

Mary Jo Snyder, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Barbara F. Green, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

WALTERS, Chief Judge.

This appeal presents questions in an area not specifically covered by the Children's Code, §§ 32–1–1 through 32–1–53, N.M.S.A.1978 (1981 Repl.) or the Rules of Procedure for the Children's Court, N.M.S.A.1978 (1982 Repl.).[1] We are asked to decide whether, once the children's court has denied a motion to transfer under § 32–1–30 it may reconsider its ruling and order a transfer. A subsidiary question is whether the evidence presented upon reconsideration justified the transfer in this case. Other issues, listed in the docketing statement but not briefed, are deemed abandoned. *State v. Waggoner*, 97 N.M. 73, 636 P.2d 892 (Ct.App.1981). We affirm.

On September 22, 1981, a petition was filed charging the child with robbery and murder or felony murder. The child was 17½ years old on the date of the crime. On September 23, the State moved for transfer pursuant to § 32–1–29.

At the hearing on October 15, 1981, it was established that on January 16, 1981,

---

1. The delinquent acts charged took place before the 1981 amendments to the Children's Code and Children's Court Rules. However, the provisions pertinent to this case have not been amended. Our references, therefore, are to current law except as specifically noted.

Louise Hardman was knocked down by someone who snatched her purse outside a shopping center. She was elderly and ill; as a result of the incident, she suffered a heart attack and died. None of the witnesses to this incident were able to identify the assailant.

After obtaining an order for immunity, the State called witness R.B. Ard. He refused to testify and was held in contempt. The court thereafter denied the transfer for failure to show probable cause and dismissed the case. Upon reconsideration on December 10, 1981, the court revoked its dismissal and ordered that the case proceed to an adjudicatory hearing.

On December 11, the State filed a nolle prosequi on the petition because of Ard's refusal to testify.

A new petition based on the same act, containing the same charges, was then filed on March 15, 1982. The child was alleged to have been living in North Carolina; he was arrested in New Mexico on May 14, and on May 17, the State filed a motion for a discretionary transfer under § 32–1–30. The defendant moved to dismiss and to preclude a transfer hearing on grounds of due process, double jeopardy and speedy trial violations. After a hearing and receipt of briefs from the parties, the motions were denied. Issues on appeal relating to denial of the motions have been abandoned.

The transfer hearing under the new petition was held on July 1, at which Ard testified. His evidence established that the child was the person who committed the purse snatching. The court found reasonable grounds to believe that the child had committed the delinquent acts. The next day the court heard evidence of amenability to treatment as a juvenile, and two mental health professionals testified. In one's opinion the child was not amenable to treatment; the other testified that he would be. After considering the conflicting testimony and observing that the child had done well during the period of his release from detention, the court denied the motion to transfer.

On July 8, the State moved for reconsideration of transfer because it had discovered on July 5 that the child had committed an armed robbery on June 29 and another on July 5. Over the child's objections that reconsideration was barred by double jeopardy, collateral estoppel, and because the State would not be presenting new psychological evidence, the court conducted a hearing on July 19. Two witnesses identified the child as the person who, on June 29, had robbed them with a gun and threatened to kill them. The child argued that the evidence did not bear on amenability; the children's court noted its misplaced faith in the child's "apparent honesty and trustworthiness," and reversed its prior ruling, ordering the child transferred to district court for trial as an adult.

## I. *Authority or Power to Reconsider*

■ The child contends that the trial court was without authority or power to reopen the transfer hearing. The State answers that the issue was not raised below. Although express lack of judicial power was never brought to the attention of the children's court, it is apparent that the child's numerous and varied objections to the proceedings were sufficient to raise the question of the court's authority to reconsider its earlier refusal to transfer. If there is no authority for the children's court to reconsider transfer motions, the issue, of course, is jurisdictional. *See In re Doe, III,* 87 N.M. 170, 531 P.2d 218 (Ct.App.1975).

We analyze the issue of the children's court's right to reconsider from two viewpoints: (a) legal authority to allow or, at least, not prohibit reconsideration; and (b) policy.

### (a) *Allowance; absence of prohibition*

The State cites Children's Court Rule 17 as authority that transfer hearings may be reopened. The child, on the other hand, argues that this is strictly a harmless error rule. The rule provides:

Rule 17. Harmless error; failure to comply with time limits.

Error or defect in any ruling, order, act or omission by the court or by any of the parties including failure to comply with time limits is not grounds for granting a new hearing or for setting aside a verdict, for vacating, modifying or otherwise disturbing a judgment or order, or for dismissing an action, unless refusal to take any such action appears to the court inconsistent with substantial justice or unless these rules expressly provide otherwise.

Implicit in the rule is a recognition that the court has the power in certain circumstances to grant new hearings or to vacate and disturb prior orders. No other sections in either the Children's Code or Rules of Procedure for the Children's Court, however, expressly provide for doing so. Compare R.Crim.P. 45, N.M.S.A.1978 (1980 Repl.); R.Civ.P. 59, 60, N.M.S.A.1978 (1980 Repl.). Neither do the magistrate rules of criminal procedure make express provision for motions for new trials, R.Crim.P. Mag.Ct. 1 through 43, N.M.S.A.1978 (1981 Repl.), but R.Crim.P.Mag.Ct. 19(c) refers to release pending a motion for a new trial. An irrefutable conclusion from these observations is that the procedural rules do not, and were not intended to cover every eventuality. No citation is necessary to agree that if a rule adopted by the Supreme Court exists, it must be followed. But when there is no rule, we may infer authority from other rules or from general principles.

One reasonable inference applicable to this case arises from the established authority of a court to alter an interlocutory ruling. A transfer of jurisdiction under either § 32–1–29 or § 32–1–30, however, terminates the jurisdiction of the children's court. Section 32–1–19(C); § 32–1–30(B). Such a transfer is appealable. In re Doe, 86 N.M. 37, 519 P.2d 133 (Ct.App.1974). But the denial of a transfer motion is not final—it simply leaves the case in the children's court for further proceedings. It is, accordingly, interlocutory. See People v. Murphy, 102 Ill.App.3d 448, 58 Ill.Dec. 152, 430 N.E.2d 94 (1981); Ex parte Allen, 630 S.W.2d 693 (Tex.App.1981). A court may alter an interlocutory order at any time prior to a judgment concluding the litigation. Barker v. Barker, 94 N.M. 162, 608 P.2d 138 (1980); Barnett v. Cal M, Inc., 79 N.M. 553, 445 P.2d 974 (1968); Lamy v. Remuson, 2 (Gild.) N.M. 245 (1882). The children's court has the inherent power to reconsider, by reason of its non-final nature, an order denying a motion to transfer.

As a second basis for reaching this conclusion, we note that none of the usual impediments are present that might prohibit the children's court from reconsidering its ruling.

(1) The child does not argue a time bar to the transfer. Although that question was raised in the docketing statement, it has been abandoned. We take note that the State's motion was filed before any hearing on the merits or any adjudicatory hearing. Section 32–1–30; R.P.Ch.Court 43. The first motion to transfer on the new petition was filed a few days after the child returned to New Mexico. Because the child was not in detention, the hearing held a month-and-a-half later was timely. R.P.Ch. Court 43.1. The motion to reconsider was thereafter filed only a few days following the court's denial of transfer and within a few days after the State's discovery of new evidence. The request for reconsideration, also, was made well with the limitation of Rule 43.1. Cf. State v. Doe, 96 N.M. 515, 632 P.2d 750 (Ct.App.1981).

(2) Apart from the fact that the child abandoned the claim, double jeopardy is not an issue. The child is not put into jeopardy at a transfer hearing. In Interest of S.M.P., 285 S.E.2d 408 (W.Va.1981); People in Interest of L.V.A., 248 N.W.2d 864 (S.D.1976). See Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975); State v. Doe, 91 N.M. 158, 571 P.2d 425 (Ct.App.1977).

(3) Collateral estoppel is similarly not an issue. That doctrine only applies to final judgments. C & H Construction & Paving Co. v. Citizens Bank, 93 N.M. 150, 597 P.2d 1190 (Ct.App.1979). See State v. Orosco, 22 N.M.S.B.B. 111. As we have

earlier said, the order denying the transfer is not a final judgment.

The absence of grounds upon which to rest a conclusion that reconsideration should be prohibited lends itself to a determination that the court's authority to reconsider was unimpaired.

### (b) Policy

Because the statutes and rules make no specific provision for allowing or prohibiting rehearings on transfer motions, it is relevant to examine the wisdom or fairness of reconsideration.

On the side of the child, one might question the use of a procedure which permits the State to vex the child with repeated rehearings until the court is finally persuaded to the State's position. There is further the likelihood that the older a child gets as additional procedures are exhausted, the less amenable to treatment as a child he will become and, thus, age alone will make him more susceptible to transfer as an adult.

We believe that an analysis such as was suggested in *State ex rel. Delgado v. Stanley,* 83 N.M. 626, 495 P.2d 1073 (1972), will meet these presumed arguments. In other words, should the State pursue a course of filing motions for rehearings in an effort to obtain a favorable result before or after the child exceeds the age of successful rehabilitation as a juvenile, the courts would deal with it according to the guidelines of *Stanley, supra.* In the instant case, the good faith of the State is not in question.

■ Examining the procedure from the State's viewpoint, on the other hand, forces a recognition of the policy that criminal consequences are imposed upon delinquents only consistently with the protection of the public. Section 32–1–2. If a child once amenable to treatment is no longer so, or if he behaves in a manner that leaves the public unprotected should he be treated as a juvenile offender, the children's court must have the power to transfer him, notwithstanding a prior determination not to do so. *See State v. Doe,* 97 N.M. 263, 639 P.2d 72 (Ct.App.1981).

■ These policy considerations must also be concerned with the kind of evidence the court may consider upon a rehearing for transfer. Should the hearing be limited to evidence relating only to circumstances or events occurring before the original hearing? Several cases have held that because of perceived reasons for juvenile codes and their provisions to permit transfer to district court for trial of a juvenile as an adult, the evidence to be considered may be that existing at the time of the latest transfer hearing, in addition to that produced at the earlier hearing. *Matter of Welfare of Hartung,* 304 N.W.2d 621 (Minn.1981); *In Interest of White,* 227 Kan. 881, 610 P.2d 1114 (1980); *Commonwealth v. Sadler,* 301 Pa. Super. 228, 447 A.2d 625 (Pa.Super.1982). We agree with the reasoning of those courts.

■ For these reasons also, we hold that district courts must have discretion to reopen transfer hearings for the purpose of reconsidering decisions rendered before new evidence of cause for transfer became available, and before the adjudicatory phases of determination have been reached.

### II. Correctness of the Children's Court Ruling

The child contends that the trial court's first determination, based on conflicting evidence, was correct; that the new evidence, concerned only with his conduct and not based upon expert testimony regarding his amenability to rehabilitation, presented nothing upon which the trial court could have based an alteration of its earlier ruling. Primary reliance is placed on *State v. Doe,* 93 N.M. 481, 601 P.2d 451 (Ct.App. 1979). The child in that case was charged with causing a death which appeared to result from a hunting accident. The prosecutor wanted to try the child for murder, in district court, because of the greater penalty attaching if conviction as an adult were obtained. The evidence was uncontradicted that the child was amenable to treatment as a child, yet the district court ordered the transfer. This court reversed, holding that the transfer evinced an abuse of discretion.

That *Doe* case (93 N.M. 481, 601 P.2d 451) is eminently distinguishable. In the instant case, the evidence of amenability at any point in the proceedings was not undisputed. It may even be said that because of the nature of the offense (strong-arm roughness against an elderly woman), the age of the child (almost 18 at the time of the crime), and the conflicting expert testimony regarding amenability, the evidence preponderated in favor of a transfer. That is not to say that the court erred in denying a transfer. Section 32–1–30 is discretionary. "The only determination to be made * * * is whether, because of the child's age and type of delinquent act involved, the case should be tried in district court." *State v. Garcia,* 93 N.M. 51, 53, 596 P.2d 264, 266 (1979). However, the serious nature of the offenses which trigger proceedings under § 32–1–30 make certain factors relevant to transfer under § 32–1–29 not relevant, and amenability need only be "considered". *See State v. Doe,* 91 N.M. 506, 576 P.2d 1137 (Ct.App.1978). The children's court, in this case, noted the unforeseeability of the victim's death and, expressing a wish to give the child a chance for rehabilitation, properly exercised its discretion in initially denying the transfer. That determination was not against logic and the effect of the circumstances then before it. *State v. Hargrove,* 81 N.M. 145, 464 P.2d 564 (Ct.App.1970). But its decision to reverse itself was not without logic and due regard for the totality of the circumstances, either.

The child acknowledges that a decision of amenability must include a prediction regarding the child's future conduct. *State v. Doe,* 93 N.M. 481, 601 P.2d 451 (Ct.App.1979). Notwithstanding, the child characterizes this case as one in which no attempt was made to rehabilitate the child. Thus, he argues, it is unfair to urge that commission of another crime on the eve of his transfer hearing should be held against him. The child also reads the *Doe* case, immediately *supra,* as presenting the proposition that conduct can never raise a factual issue of amenability. That is incorrect. *Doe* specifically notes that instances of conduct may be relevant to that inquiry. *Id.* 93 N.M. at 483, 453, 601 P.2d 451. Common sense dictates that commission of a serious crime by the child while a transfer hearing is pending is an instance of conduct relevant to a prediction concerning probable future conduct and the likelihood of success of court-ordered rehabilitation treatment. Under a likely more favorable disposition in accordance with the first refusal to transfer, and the opportunity for rehabilitation attendant thereto, it was not beyond the bounds of reason for the trial court to reverse its original denial and to order the child's transfer for trial in district court.

Finally, the child gives no effect to the wholly discretionary nature of the court's determination under § 32–1–30, or to the statute's requirement that the children's court need only "consider" whether the child is amenable to treatment. *See State v. Doe,* 97 N.M. 598, 642 P.2d 201 (Ct.App. 1982). "Amenability" is not alone controlling.

The child suggests that an appropriate disposition in this case would be to leave the child in children's court on this charge of murder, and be satisfied with the State's right to prosecute him as an adult on the armed robberies. This contention may have superficial appeal, but under the circumstances of this case it is indeed unpersuasive. The child is now 20 years old; he is unquestionably subject to punishment in the adult system for the robberies. It would be a waste of resources, and totally contrary to the purposes of the Children's Code, to pursue a charade of dealing with him as a child on a felony murder charge, and as an adult on charges of crimes equally transferrable to district court under § 32–1–30 if committed by a child. The child's brief offers no compelling reasons to nullify the decision of the children's court that he be required to stand trial as an adult on the murder charge.

The order of transfer is AFFIRMED.

IT IS SO ORDERED.

HENDLEY and NEAL, JJ., concur.